

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 9123 | **DATE** | 04/10/12 |
| **CASE TITLE** | Pentecostal Assemblies of the World, Inc. v. Collins et. al. | | |

**DOCKET ENTRY TEXT:**

Upon review of the Complaint, the Court finds that the Plaintiff has not properly pleaded facts to support this Court's exercise of jurisdiction. The Court directs the Plaintiff to file an amended complaint on or before May 10, 2012, that properly alleges the citizenship of the parties, or the Court will dismiss this case for lack of jurisdiction. Further, counsel for Plaintiff is directed to provide a copy of this Order to its client and to make no charge for any services necessary in complying with this Order.

■[ For further details see below.]  Docketing to mail notice.

## STATEMENT

The Plaintiff, Pentecostal Assemblies of the World, Inc. (PAW), brings a breach-of-contract claim against the Defendants, invoking the Court's diversity jurisdiction. However, PAW fails to allege sufficient facts to invoke this court's diversity jurisdiction. To invoke a court's jurisdiction under 28 U.S.C. § 1332, a party must allege, among other things, that there is complete diversity between the parties, meaning that the parties are *citizens* of different states. 28 U.S.C. § 1332. In this case, PAW alleges only the *residence* of the various parties. Citizenship and residence, however, are not synonyms; and PAW's jurisdictional allegations are thus insufficient on that front. *Hunter v. Amin*, 583 F.3d 486, 491 (7th Cir. 2009). Moreover, PAW alleges that one of the Defendants, Jurare Resource Group, Inc. (Jurare), is a "convention management firm" and goes on to allege where it is "located at." PAW's allegations in this regard are deficient on two grounds. First, PAW does not make clear whether Jurare is a corporation or a limited liability corporation or some other kind of limited partnership. Second, regardless of whether Jurare is a corporation or an LLC or partnership, its citizenship is not defined by where it is "located." Corporations have dual citizenship — they are citizens of both the state in which they were incorporated and the state in which they have their principal places of business. *McMillan v. Sheraton Chicago Hotel & Towers*, 567 F.3d 839, 845 n. 10 (7th Cir. 2009) (citing 28 U.S.C. § 1332(c)(1)). PAW has alleged neither. If it is an LLC or some similar type of organization, PAW must allege the citizenship of its members. *Muscarello v. Ogle Cty. Bd. of Comm'rs*, 610 F.3d 416, 424 (7th Cir. 2010). In addition, PAW fails to properly allege its own citizenship. It states that it is a religious organization but fails to specify what type of organization it is or follow the rules for declaring its citizenship, as noted above. *Denlinger v. Brennan*, 87 F.3d 214, 217 (7th Cir. 1996).

# STATEMENT

These are well-settled rules, and PAW's wholesale disregard of them is sloppy. The Court directs PAW to file an amended complaint that properly alleges the citizenship of the parties, or the Court will dismiss this case for lack of jurisdiction. Further, counsel for PAW is directed to provide a copy of this Order to its client and to make no charge for any services necessary in complying with this Order.

Finally, § 1332 requires claims invoking a court's diversity jurisdiction be in excess of $75,000. PAW alleges that it has suffered damages exceeding $175,000 because of the Defendants' conduct. But that claim is dubious on its face. In essence, PAW alleges that after it selected a different event-planning firm to book and organize its convention space, the Defendants continued to act on PAW's behalf without any legal authority to do so. PAW alleges that the Defendants, among other things, obligated PAW to blocks of rooms without the legal authority to do so and cancelled the blocks of rooms that PAW's other event-planning firm had booked for it. According to the allegations, one of the fraudulently booked contracts would have earned Defendants $6,000. PAW further alleges that it had to expend resources — presumably from its new event-planning firm — to renegotiate the blocks of rooms that Defendants cancelled. Curiously, PAW alleges that the Defendants' unethical actions, "left uncorrected . . . *would have left* [it] with a substantial financial attrition penalty as well as the inconvenience and added expense of securing adequate meeting space." (Compl. ¶ 26). But PAW *did* correct them, and the hypothetical damages it might have suffered if it had not been made aware of Defendants' conduct cannot constitute part of its damages. Rather, its damages are the expenses it had to incur in order to correct those actions.

Those expenses are two-fold: (1) expenses in paying someone to renegotiate the contracts that Defendant Debra Collins cancelled or fraudulently planned; (2) expenses associated with higher room fees due incurred after the bookings were renegotiated. PAW alleges that Defendants would have received $6,000 in commission for one of the alleged fraudulent bookings; it is difficult to envision that corrective action in four cases would have totaled anything approaching $175,000. At the moment, the amount in controversy is not contested. While it is difficult to envision that PAW suffered $175,000 in actual damages because of the Defendants' misconduct, it is not a "legal certainty" at this point. Depending on the number of rooms that PAW books and potential increases in rates during the renegotiation process, PAW conceivably could have suffered damages in excess of $75,000. That is enough, for now. *St. Paul Mercury Indem. Co. v. Red Cab. Co.*, 303 U.S. 283, 289, 58 S.Ct. 586 (1938); *McMillan*, 567 F.3d at 844. However, the burden of demonstrating that the claim satisfies the amount-in-controversy requirement remains with PAW; and should Defendants later challenge that amount, PAW shall have to support its allegation with competent proof to stave off dismissal for want of jurisdiction. *McMillan*, 567 F.3d at 844. PAW would be advised in amending its complaint to make more clear the basis for its claim that it has suffered $175,000 in damages lest Defendants challenge that amount and put PAW to its proof.